**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Mack Industries, Ltd., et al., | ) | |
| | ) | No. 17 B 09308 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Ronald R. Peterson, as Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 A 00148 |
| | ) | |
| Premier Electric Services Corp., | ) | |
| | ) | |
| Defendant. | ) | Judge Carol A. Doyle |

**Memorandum Opinion**

Ronald Peterson filed this adversary proceeding as trustee of chapter 7 debtor Mack Industries, Ltd.  He sued Premier Electric Services, Inc. seeking to avoid over $520,000 in transfers as fraudulent or preferential.  Premier moved to dismiss the claim in Count 1 of the amended complaint for fraudulent transfer based on constructive fraud.  It argues that this court has dismissed very similar claims in other adversary proceedings and should dismiss here for the same reasons.  Premier is correct.  Its motion will be granted.

1

1.      Background

The trustee filed this adversary proceeding along with approximately 400 similar ones seeking to avoid transfers that were allegedly fraudulent or preferential.  In almost all of those cases, he sued as trustee of two chapter 7 debtors:  Mack and Oak Park Avenue Realty, Ltd. ("Oak Park").  He alleged that transfers were fraudulent because Mack was trying to deplete its assets to prevent one of its creditors from collecting from it.

According to all of the complaints, Mack had a contract to manage hundreds of properties owned by American Residential Leasing Company LLC.  Mack was required to lease the properties, maintain them, pay the property taxes, and pay certain rental and other fees to American Residential.  In mid-2014, Mack tried to renegotiate the contract with American Residential.  During negotiations, a Mack vice president allegedly threatened that Mack would deplete its assets so American Residential could not collect if it refused to renegotiate.  The trustee contends that Mack carried out this plan by using its assets for the benefit of other entities.  He seeks to recover from many parties who purchased property from Mack or related entities and then hired Oak Park to manage the properties, including collecting rent from tenants. Mack often paid those parties even though Oak Park owed them the money.  The trustee is also attempting to recover from parties who provided goods and services to Mack that Mack used to improve properties owned by other entities.

In this case, the trustee alleges that Premier is an electrical contractor and that Mack paid Premier for work it performed on properties that Mack did not own.  He seeks to avoid the payments as fraudulent transfers based on constructive fraud in Count 1 and based on actual fraud in Count 2.  Premier seeks to dismiss the constructive fraud claim in Count 1.  It relies on

this court's previous rulings in *Peterson v. TTS Granite, Inc. (In re Mack Industries, Ltd.)*, 622

B.R. 887 (Bankr. N.D. Ill. 2020), and *Peterson v. Ferguson Enterprises Inc. (In re Mack*

*Industries, Ltd.)*, No. 19-ap-436, 2020 WL 6589040 (Bankr. N.D. Ill. Nov. 10, 2020). In both

cases, the court held that the trustee failed to state a claim for constructive fraud when the only

factual basis alleged for lack of reasonably equivalent value was that Mack used the goods and

services it procured to improve properties owned by others. Premier is correct that under the

analysis in *TTS Granite* and *Ferguson*, the constructive fraud claim against it should be

dismissed.

2.      Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a plaintiff's

factual allegations are accepted as true and the court draws reasonable inferences from them in

the plaintiff's favor. *Taylor v. JPMorgan Chase Bank, N.A.*, 958 F.3d 556, 562 (7th Cir. 2020).

The trustee contends that the court must draw "all *possible* inferences in the plaintiff's favor,"

(emphasis added), citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Though

the *Tamayo* court stated the standard that way, more recent Seventh Circuit decisions in fraud

cases require the court to draw "reasonable inferences" in the plaintiff's favor, not "all possible

inferences." *E.g., NewSpin Sports, LLC v. Arrow Electronics, Inc.*, 910 F.3d 293, 299 (7th Cir.

2018); *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir.

2018); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014); *Pirelli*

*Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447 (7th

Cir. 2011). More broadly, the Supreme Court instructs that "[a] claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (emphasis added).

Rule 8(a) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 8. A complaint must clear "two easy-to-clear hurdles" to satisfy Rule 8(a). *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough information to give the defendant "fair notice" of the claim. *See Reger Dev't. LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2019). The complaint need not make detailed factual allegations but there must be at least some facts supporting each element of the claim. *Iqbal*, 556 U.S. at 678. Second, the complaint must plausibly suggest that the plaintiff has a right to relief, raising that right above the speculative level. *Concentra*, 496 F.3d at 776.

When alleging fraud, Rule 9(b) requires more. A plaintiff must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. Particularity means "the who, what, when, where and how: the first paragraph of any newspaper story." *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996). The particularity standard is "somewhat relaxed" for a bankruptcy trustee because he may lack information that the debtor would have. *See, e.g., Cox v. Grube (In re Grube)*, 500 B.R. 764, 776 (Bankr. C.D. Ill. 2013); *Marwil v. Oncale (In re Life Fund 5.1 LLC)*, No. 10-ap-42, 2010 WL 2650024 (Bankr. N.D. Ill. June 30, 2010). Nevertheless, the trustee must still comply with the "who, what, when, where and how test" of particularity. *See Life Fund 5.1*, 2010 WL 2650024 (fraudulent transfer claims filed by a trustee were dismissed for failure to plead the precise amount of the transfer,

the date of the transfer, and the debtor from whose account the money was transferred).  The

heightened standard under Rule 9(b) applies to fraudulent transfer claims based on constructive

fraud.  *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir.

1997); *In re Life Fund 5.1*, 2010 WL 2650024, at *3.

A plaintiff seeking to avoid a fraudulent transfer based on constructive fraud under §

548(a)(1)(B) must plead and prove the following:  (1) a transfer of the debtor's property or

interest; (2) made within two years before the date the bankruptcy petition was filed; (3) for

which the debtor received less than a reasonably equivalent value in return; and (4) that the

debtor (a) was insolvent on the date of the transfer or became insolvent as a result, (b) engaged

in business or a transaction as a result of which the debtor's remaining capital was unreasonably

small, or (c) intended to incur, or should have known he would incur, debts he would be unable

to pay.  *KHI Liquidation Trust v. C. Goshy Enterprises, Inc. (In re Kimball Hill, Inc.)*, No.

10-ap-998, 2012 WL 5880657, at *5 (Bankr. N.D. Ill. Nov. 19, 2012); *Grube*, 2012 WL

3263905, at *4; *Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 440 (Bankr.

N.D. Ill. 1995).  Under the Illinois Uniform Fraudulent Transfer Act, the elements are the same,

though the look-back period is longer. 740 ILCS 160/5; *Reinbold v. Morton Community Bank (In

re Mid-Illini Hardwoods, LLC)*, 576 B.R. 598, 604 (Bankr. C.D. Ill 2017).

Here, Premier argues that the trustee failed to allege facts to support the element of lack

of reasonably equivalent value.  Based on the analysis in *TTS Granite* and *Ferguson*, the court

agrees.

5

3.      *TTS Granite* and *Ferguson*

In both *TTS Granite* and *Ferguson*, the court dismissed constructive fraud claims that were very similar to the trustee's claim here.  TTS Granite provided granite, fabricated it, and installed it in locations as directed by Mack in properties not owned by Mack.  Ferguson provided plumbing supplies to Mack that Mack then installed in properties owned by others.  The court's analysis and conclusion in both cases was the same:  the trustee failed to allege facts to support an essential element of his constructive fraud claim - that Mack did not receive reasonably equivalent value for the payments it made to the defendants.[1]  In both cases, as here, the trustee's sole factual basis for the lack of reasonably equivalent value is that the goods and services were used in properties owned by entities other than Mack.  That is not sufficient to state a claim for constructive fraud.

The court will not repeat the full analysis in *TTS Granite* and *Ferguson* here.  The short version is as follows.  The focus of the inquiry regarding reasonably equivalent value "must be on the specific transaction the trustee seeks to avoid, *i.e.*, the *quid pro quo* exchange between the debtor and the transferee, rather than an analysis of the transaction's overall value to a debtor as it relates to the welfare of the debtor's business."  *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mort. Inv. Corp.),* 256 B.R. 664, 678 (Bankr. S.D.N.Y. 2000).  Courts seek to ensure that there is an exchange of property that is a fair equivalent and "not disproportionately small as

---

[1]In *Ferguson*, the supplier merely provided goods to Mack in exchange for payment; it did not install them in properties.  In *TTS Granite*, the supplier provided granite, fabricated it, and then installed it in properties as Mack directed.  Factually, this case is closer to *TTS Granite* because the trustee alleges that Premier performed electrical contracting services, which presumably includes supplying equipment and installing it.  But the analysis is the same here as in both *TTS Granite* and *Ferguson*.

compared with the value of the property or obligation obtained." *Id.* Courts examine "the objective value of the goods and services provided rather than the impact the goods and services had on the bankrupt enterprise." *Trauner v Delta Air Lines, Inc. (In re Think Retail Solutions, LLC)*, No.17-ap-5078, 2019 WL 2912717 at *16 (Bankr. N.D. Ga. July 5, 2019); *TTS Granite*, 622 B.R. at 893-84 (citing additional authority). "[U]nder § 548, in assessing the "value" of property, goods or services provided directly to the debtor, the question is not whether the debtor subjectively benefitted from the property it received; the operative question is whether the property, goods, or services provided had objective value." *McHenry v. Dillworth (In re Caribbean Fuels Am., Inc.)*, 688 F. App'x 890, 894-95 (11th Cir. 2017).

Courts determine the objective value as of the date of the transfers, not on a post-transfer basis that considers whether the purchase was wise or impacted the financial picture of the debtor. *Think Retail*, 2019 WL 2912717, at *16. "'Courts will not look with hindsight at a transaction because such an approach could transform fraudulent conveyance law into an insurance policy for creditors.'" *Kipperman v. Onex Corp.*, 411 B.R. 805, 837 (N.D. Ga. 2009) (quoting *In re Joy Recovery Technology Corp.*, 286 B.R. 54, 75 (Bankr. N.D. Ill. 2002)). This is true even when the transaction in question harmed creditors and diminished the debtor's bankruptcy estate. *TTS Granite*, 622 B.R. at 893-94 (citing authorities). The analysis regarding reasonably equivalent value does not change when a third party benefits from the transfer. *Think Retail,* 2019 WL 2912717, at *16; *TTS Granite*, 622 B.R. at 894.

Here, as in *TTS Granite* and *Ferguson*, the trustee failed to allege sufficient facts regarding the lack of reasonably equivalent value to state a claim for constructive fraud.[2]  Mack got exactly what it paid for - electrical contracting services.  It makes no difference who owned the properties where Premier performed the work.

The trustee contends that the court was mistaken in its conclusion in *TTS Granite* and *Ferguson* that it does not matter who owned the properties that benefitted from the defendants' goods and services.  He calls Premier's argument a "novel theory," which is a polite way of saying that the court's previous rulings are "novel" and thus incorrect.  The court stands on the analysis of the statutes and relevant case law in *TTS Granite* and *Ferguson*.  Indeed it is the trustee who presents the novel theory.  In his view, if a purchaser who is insolvent uses goods and services to benefit others, the vendor can be forced to repay the price paid even though it was a fair exchange.  As explained in *Peterson v. Capital One (In re Mack Industries, Ltd.)*, the trustee's theory of constructive fraud could turn every vendor into an insurer that an insolvent purchaser does not make inappropriate use of goods and services.  No. 19-ap-372, 2020 WL 6708874, at * 6 (Bankr. N.D. Ill. Nov. 16, 2020).

The trustee failed to cite a single case in which a court avoided a transfer as constructively fraudulent based on what the transferor did with the goods and services it paid for.  He could only analogize to two cases addressing whether an indirect benefit to a debtor can provide reasonably equivalent value.  Neither supports his argument.

---

[2]Premier argues that the court's conclusions in *TTS Granite* and *Ferguson* are binding here under the law of the case doctrine.  The trustee contends that the doctrine does not apply in a different adversary proceeding.  The court need not resolve this dispute.  It adopts the analysis in those decisions here without resort to the law of the case doctrine.

In the first case the trustee cited, *In re Leonard*, 454 B.R. 444 (Bankr. E.D. Mich 2011), the court held that a parent did not get reasonably equivalent value when he paid college tuition for a child because any indirect benefit was not economic, concrete, or quantifiable. The case has no relevance here, where there was a direct exchange between the parties of money for goods and services.

The trustee also cited *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 Fed. App'x 337, 343 (6th Cir. 2006), for the proposition that the focus for reasonably equivalent value "should be on the overall effect on the debtor's net worth after the transfer." Trustee's Response p. 7. The trustee seems to suggest that the case supports his view that Mack did not get reasonably equivalent value if it used the goods and services it paid for to benefit others, causing a decline in the debtor's net worth or overall financial condition. The case holds no such thing and does not support his argument. To the contrary, it supports the court's conclusion that courts do *not* look at the effect of a transfer on the debtor's overall financial condition in evaluating reasonably equivalent value.

In *Wilkinson*, an individual debtor was a majority shareholder in a company. He personally paid a supplier for goods to be shipped to the company. The debtor owed a substantial debt to that company and this payment reduced the amount of that debt. The district court held that the debtor received reasonably equivalent value because his debt to the company was reduced on a dollar-for-dollar basis by the amount he paid for the goods. The Sixth Circuit affirmed. It explained many of the principles discussed in *TTS Granite* and *Ferguson*, including that the focus under § 548 is "on the value of the goods and services provided rather than on the impact the goods and services had on the bankruptcy enterprise." *Id.* at 341. It then explained

9

that an indirect benefit to a debtor can provide reasonably equivalent value in some

circumstances.  The court concluded that the reduction in the debt owed by the debtor to the

company was an indirect benefit that provided reasonably equivalent value, noting that § 548 is

"directed at what the debtor surrendered and what the debtor received *irrespective of what any

third party may have gained or lost*."  *Id.* at 343 (italics added).  In discussing the indirect

benefit, the court noted that the district court correctly focused "on the overall effect on the

debtor's net worth after the transfer."  That observation applied only to the indirect benefit that

the debtor received:  the debtor paid the money and reduced his liabilities by the same amount.

The court did not contradict its earlier statement that any benefit the exchange afforded to third

parties was not relevant.  *Wilkinson* supports the court's conclusion here that neither the benefit

conferred on the owners of the properties nor any decline in Mack's financial condition resulting

from the transfers affects the analysis regarding the lack of reasonably equivalent value.


4.      Reasonable Inferences

The trustee next contends that Premier's argument improperly relies on allegations "not

found in the record" - that there was a contract between Mack and Premier and that Mack

directed where Premier performed its work.[3]  He argues that the court may not infer that there

was a contract or that Mack directed the work, suggesting that the court cannot dismiss his

---

[3]The trustee is correct in arguing that the court cannot consider factual matters raised in
the motion that are not reflected in the allegations of the complaint, including that an employee
of Mack would call or email Premier to give a task, property, and time to perform work.  The
court has not considered any matters argued in the motion that are not alleged in the amended
complaint.  If Premier's assertions are true, however, they could explain why the trustee is
unable to allege, or even argue, that any entity or person other than Mack directed where Premier
performed its work.

constructive fraud claim under the analysis in *TTS Granite* and *Ferguson* without those inferences. This is not correct.

First, the trustee argues that there is no basis in the allegations for concluding that Mack and Premier had a contract. He states that he does not have sufficient information to determine whether Mack had "any contract" with Premier and that he did not allege that Mack entered into contracts with Premier. It is not clear what the trustee means by these statements because he has alleged that there was an agreement between Mack and Premier. In Paragraph 66 of the Amended Complaint, he alleges: "Between January 4, 2013 and December 30, 2016, the Debtor *incurred obligations* and made payments *to Premier* totaling $521,069.32 *to improve parcels* of real estate that the Debtor did not own." Amended Complaint ¶ 66. To incur an obligation to improve real estate is to agree to accept consideration - electrical contracting services - in exchange for payment. That is a contract. No other reasonable meaning is apparent or offered by the trustee. The trustee's assertion that "ordinary usage" of "incurred obligations" does not imply a contract is unpersuasive and ignores the rest of the words in his sentence. And if the trustee's allegation that Mack incurred obligations to Premier to improve property and paid them were not enough, Exhibit A to the amended complaint lists many specific invoices issued by Premier to Mack that were paid by Mack. The trustee provided the invoice number, the invoice date, the property at which the work was performed, the PIN number of the property, and the owner of the property. The paid invoices reflect an agreement between the parties that Premier would perform the electrical work covered by them and that Mack would pay for those services. *See H & H Press, Inc. v. Axelrod*, 265 Ill. App.3d 670, 678, 638 N.E.2d 333, 338 (1st Dist.1994) (paid invoices are evidence of contract); *Plymouth Tube Company v. Pilepro Steel, LP*, No. 15-

cv-10353, 2017 WL 4707454, at *5 (N.D. Ill. Oct. 19, 2017) (same); *STOPS Enterprises, LLC v. United Medical Equipment Co.*, No. 12-cv-7763, 2014 WL 2699723, at *7 (N.D. Ill. June 13, 2014) (same). The trustee had not alleged facts that could possibly lead to any other conclusion. The trustee's attempt to backtrack from his allegations about an agreement between Premier and Mack in light of the *TTS Granite* and *Ferguson* decisions is unavailing.

Second, the trustee contends that he did not specifically allege that Mack directed where Premier performed its work. He seems to argue that the court cannot properly infer that Mack directed where the work would be done and therefore cannot dismiss for failure to allege lack of reasonably equivalent value. This is not correct. As discussed above, the court is required to make *reasonable* inferences in the trustee's favor from the facts alleged, not *any* inference the trustee seeks. *Krueger v. Boyd*, No. 93–cv–7352, 1994 WL 505301, at *4 (N.D. Ill. Sept. 15, 1994) (Rule 12(b)(6) "permits us to make only reasonable inferences," not unreasonable ones); *see, e.g., Northern Trust Co. v. Peters*, 69 F.3d 123, 132 (7th Cir. 1995) (refusing to draw unreasonable inferences); *Sandefur v. Dart*, No. 17-cv-2048, 2017 WL 3311018, at *3 (N.D. Ill. Aug. 3, 2017) (same). It is reasonable to infer that a party who "incurred the obligation" and paid for the services directed where the services would be provided. The trustee also alleged that James K. McClelland owned Mack and that he and his son, James H. McClelland, managed it. Amended Complaint ¶ 6 and 7. Mack was in the business of "flipping houses: the Debtor would acquire real estate, rehab it, and then sell it or rent it to generate income." Amended Complaint, ¶ 8. Obviously Premier did not choose where it performed the work that Mack would pay for. The only reasonable inference from the facts alleged is that Mack, through its owner and managers (James K. McClelland or James H. McClelland) or an employee authorized by them,

told Premier where to perform the rehab work for which Mack would pay.

The trustee failed to explain why any other inference is reasonable. He simply contends that "the record is insufficient" about who directed where Premier performed its work. He says that the court cannot make any inference at all about who directed the work because he did not specifically allege who did it. The trustee is really asking the court to make an unreasonable inference: that someone other than Mack directed where Premier performed its work. The trustee did not allege any facts that would make such an inference reasonable. If he had any factual basis for inferring that someone other than Mack directed Premier's work, he would have alleged it or at least raised it in his response and sought leave to amend. He did not. The court is not required to infer that someone other than Mack directed Premier's work merely because the trustee failed to allege who did.

But regardless of inferences about who directed the work, the trustee fails to state a claim. His allegations and Exhibit A show that Premier and Mack had a contract or contracts to perform the services. To allege that Mack did not receive reasonably equivalent value, the trustee must allege facts that show that the services were not worth the money Mack paid for them, regardless of whether they harmed Mack's financial condition or benefitted another party. As in *TTS Granite* and *Ferguson*, the trustee cannot prevail based on his allegations that reasonably equivalent value was not provided because Premier performed its work on properties owned by others. This is true whether or not there is a specific allegation or inference about who directed the work. It's all about the *quid pro quo* - were the services worth what Mack paid for them, not who else may have benefitted from them or exactly who directed the work.

13

5.      Affirmative Defense

Finally, the trustee argues that Premier is really trying to obtain dismissal based on an affirmative defense that it provided reasonably equivalent value.  Not so.  The dismissals in *TTS Granite* and *Ferguson* were not based on an affirmative defense, nor is Premier raising an affirmative defense here.  As discussed above, the trustee bears the burden to plead and prove the *lack* of reasonably equivalent value as an essential element of his claim.  *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir.1997); *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 726 (Bankr. N.D. Ill. 2006); *In re Jumer's Castle Lodge, Inc.*, 338 B.R. 344, 354 (C.D. Ill. 2006).  This element is distinct from the affirmative defense available under § 548(c) that the transferee gave value for the transfer in good faith.  11 U.S.C. § 548(c).

The only case cited by the trustee for his argument that Premier is really raising an affirmative defense is *In re Roti*, 271 B.R. 281, 295 (Bankr. N.D. Ill. 2002).  It provides no support to the trustee.  The *Roti* court stated the obvious:  the trustee bears the burden of proof on lack of reasonably equivalent value and every other element of his claim.  *Id*.  It then discussed the separate affirmative defense available under § 548(c) that the defendant gave value in good faith for the transfer.  This affirmative defense does not eliminate the trustee's burden of alleging and proving the lack of reasonably equivalent value.

6.      Dismissal with Prejudice

Premier seeks dismissal with prejudice because the trustee cannot allege a valid factual basis for lack of reasonably equivalent value.  Significantly, the trustee did not oppose this request for dismissal with prejudice, nor did he ask for leave to amend.  He did not state that he

can allege any additional facts that would be relevant under the court's analysis in *TTS Granite*

and *Ferguson*.  In fact, he seemed to acknowledge that he cannot allege that the price paid for the

services was not reasonable when he stated in his response that "the Defendant did work at

approximately the customary rate."  Trustee's Response, p. 5.  It is thus clear that the trustee

cannot allege additional facts that could impact the analysis regarding lack of reasonably

equivalent value.  Dismissal therefore will be with prejudice.

7.      Conclusion

For all the reasons stated above, the claim in Count 1 to avoid transfers as fraudulent

based on constructive fraud will be dismissed with prejudice.

Dated: May 19, 2021                                    ENTERED:

                                                       Carol A. Doyle
                                                       United States Bankruptcy Judge